**UNITED STATES, Appellee**

v.

**Chris E. TRAXLER, Technical Sergeant U.S. Air Force, Appellant.**

No. 93–0622.
CMR No. 29311.

U.S. Court of Military Appeals.

Argued Jan. 6, 1994.
Decided July 14, 1994.

For Appellant: *Colonel Francis T. Lacey,* USAFR (argued); *Colonel Jay L. Cohen* and *Captain Ursula P. Moul* (on brief); *Terry J. Woodhouse.*

For Appellee: *Captain Jane L. Harless* (argued); *Colonel Jeffery T. Infelise* (on brief).

*Opinion of the Court*

WISS, Judge:

Despite his not-guilty pleas, a general court-martial with members convicted Technical Sergeant Traxler of missing movement of an aircraft through design and willfully disobeying the command of his superior officer to board that same aircraft, in violation of Articles 87 and 90, Uniform Code of Military Justice, 10 USC §§ 887 and 890, respectively. The members sentenced Traxler to a bad-conduct discharge, confinement for 1 year, reduction to the grade E–5, and a reprimand. The convening authority approved these results, and the Court of Military Review affirmed in an unpublished opinion.

On petition to this Court, we granted review of the first issue raised by appellate defense counsel and specified the second one, stated below as follows:

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO GRANT THE DEFENSE MOTION TO DISMISS CHARGE II, DISOBEYING A LAWFUL

COMMAND TO BOARD AN AIRCRAFT, WHEN THE UNDERLYING OFFENSE OF MISSING MOVEMENT WAS ALSO CHARGED.

WHETHER CHARGE I [missing movement through design] IS MULTIPLICIOUS WITH CHARGE II.

We hold that Traxler properly was convicted both of missing movement through design and willfully disobeying his superior officer's order. We hold further that the two offenses are not multiplicious for findings, *see United States v. Teters,* 37 MJ 370 (CMA 1993), and that no notion of "ultimate offense" limits the maximum punishment just to that which is provided for missing movement.

## I

### A

Appellant, among others, received orders to board a certain aircraft for deployment to Europe on a Joint Chiefs of Staff exercise relating to Operation Desert Shield/Desert Storm; deployment was scheduled for December 15, 1990. In response, he told his first sergeant that he would not make the flight. He explained that he had a separation date in July 1991 and would go on terminal leave in April 1991. When the first sergeant retorted that his separation could be delayed, appellant offered additional explanations: He was going to start a business upon separation from the Air Force and, for a variety of reasons, that could not be delayed; also, he had a fear of flying that had resulted from an incident on some earlier military flight.

On December 12, appellant spoke with his commander, Captain Collins, and gave similar reasons why he could not deploy. Collins answered that appellant's duty was to the Air Force and to obeying orders, not to some future civilian business; further, he recommended that appellant see the chief of the mental health clinic for counseling in connection with his fear of flying.

Anticipating that appellant might still balk at his deployment, Collins sought advice from the legal office and drafted a written direct order to board the aircraft. When, on December 15, Collins was called by the flightline supervisor and told that appellant refused to board, Collins went to the flightline with the written order in his pocket.

There, Collins spoke with appellant, and the latter said, "I can't go." When Collins asked why, appellant just said, "I can't go." At this point, Collins took appellant off to the side of the aircraft and told him he was going to read to him a written order and that he wanted appellant to sign its receipt to ensure his understanding of it. The order read: "I hereby give you a direct order to board Aircraft # 63–7790 in conformance with your TDY orders (S.O. TF199 dated 12 Dec 90/31 TAW [Tactical Airlift Wing])." Appellant signed the receipt.

That done, security policemen escorted appellant away from the aircraft. Collins told appellant "that he had up until the time the actual door on the aircraft closed" to change his mind and board. Appellant did not, and so he missed the aircraft's movement.

### B

At trial, Collins testified that, after he had referred appellant to the mental health clinic, personnel there reported to Collins that appellant did not have a legitimate fear of flying; had he been told otherwise, Collins indicated that he "would not have" given his order. Collins insisted that, while he had sought advice from the legal office to deal with appellant's refusal, no discussion of punishment of appellant ever arose. Further, he maintained that "punishment was not on [his] mind" when he generated the order. Instead, he testified that the purpose of his order was "to indicate to [appellant] the seriousness of the deployment and that if he actually refused to deploy that he needed to think twice about that thought." He "put the written order together to emphasize the necessity of him to meet a deployment commitment." Collins' "hope was that [appellant] would board the aircraft and depart for Europe."

After entering findings of fact consistent with the foregoing discussion, the military judge announced the following pertinent conclusions as a predicate for denying a defense

motion to dismiss the charge of disobeying Captain Collins' order:

B. The duty imposed by the order was not routine in nature but was a specific mandate to perform a particular act at a definite time and place.

C. The accused's violation of the order was a flagrant defiance of military authority in the presence of other military personnel and in the midst of a Joint Chiefs of Staff directed military exercise.

D. Though the accused had a preexisting duty to board the deploying aircraft the order was formulated and issued by Capt. Collins with a view to adding the full authority of his position and rank to ensure the accused's compliance with the directive. It was not formulated for the purpose of enhancing the punitive consequences of a possible violation.

E. Under current applicable decisions by both the Air Force Court of [Military] Review and Court of Military Appeals, the conduct of the accused on or about 15 December 1990 are [sic] properly charged as both violations of Article 87 and Article 90 of the Uniform Code of Military Justice.

After appellant had been convicted of both crimes, counsel and the military judge turned to the question of maximum punishment. Trial counsel indicated that, although the two offenses were separate, the Government would assume the "conservative approach" and "concede multiplicity" for sentencing "since they did in one sense arise out of the same act." Thus, pointing to the maximum punishment for willful disobedience of a superior officer's order, the prosecution urged that appellant's liability extended to a dishonorable discharge, confinement for 5 years, total forfeitures, reduction to E–1, and a fine. See para. 14e(2), Part IV, and RCM 1003(b)(3) and (5), Manual for Courts–Martial, United States, 1984.

Defense counsel agreed with the rationale that the two offenses arose from the same act and, therefore, were multiplicious for sentence. However, he argued that "the underlying misconduct" was the act of missing movement and, therefore, that the confinement portion of the maximum punishment

should be that which is provided for that offense—2 years. See para. 11e(1), Part IV, Manual, supra.

Ultimately, the military judge sided with the prosecution. He reasoned that his ruling on the defense motion as well as evidence subsequently adduced during the trial "arguably could make this a seven-year offense." However, since the Government had "conced[ed] multiplicity," he accepted trial counsel's position on the maximum punishment.

II

■ Appellant argues in this Court that he had a preexisting duty to board the aircraft for deployment and that, accordingly, his disobedience of Captain Collins' order to do what he already had a duty to do cannot be made a separate and more serious crime. In other words, he contends, his "ultimate offense" was failure to deploy, not disobedience of Collins' order, and his punishment therefore is limited to the maximum punishment provided for missing movement by design. See United States v. Peaches, 25 MJ 364 (CMA 1987); United States v. Bratcher, 18 USCMA 125, 39 CMR 125 (1969); see also United States v. Quarles, 1 MJ 231 (CMA 1975).

■ Appellant's contention is accurate in general concept but is flawed in its imprecision. First, it is not simply the existence of a preexisting duty to do that which was the subject of the order that is material; rather, it is the nature of that preexisting duty. Generally, when the subject of an order from a superior officer amounts merely to performing routine soldierly duties, the order is no more than an admonition to obey the law and, thus, "can have no validity beyond the limit of the ultimate offense committed." United States v. Bratcher, supra at 128, 39 CMR at 128; accord United States v. Peaches, supra at 366. Cf. United States v. Pettersen, 17 MJ 69, 72 (CMA 1983) (where accused had duty to return to base and perform duties but where accused had indicated intention not to do so, direct and personal order from noncommissioned officer to ac-

company him back to base "represented a measured attempt to secure compliance with those pre-existing obligations."); *United States v. Loos,* 4 USCMA 478, 480–81, 16 CMR 52, 54–55 (1954) ("a superior officer may, by supporting a routine duty with the full authority of his office, lift it above the common ruck—and thus remove the failure to perform it from within the ambit of Article 86(1)."). Here, though, the military judge correctly concluded on the basis of the record that "[t]he duty imposed by" Captain Collins' "order was not routine in nature but was a specific mandate to perform a particular act at a definite time and place." *See United States v. Bratcher, supra* at 128, 39 CMR at 128; para. 14c(2)(d), Part IV.

Second, appellant's contention ignores the materiality of the purpose of the order. "Disobedience of an order which has for its sole object the attainment of some private end, or which is given for the sole purpose of increasing the penalty for an offense which it is expected the accused may commit, is not punishable under" Article 90. Para. 14c(2)(a)(iii). Here, the military judge concluded—again, soundly based on the record—that Captain Collins' order "was not formulated for the purpose of enhancing the punitive consequences of a possible violation."

Rather, as the judge concluded, "the order was formulated and issued by Captain Collins with a view to adding the full authority of his position and rank to ensure the accused's compliance with the directive." *See United States v. Pettersen* and *United States v. Loos,* both *supra.* Captain Collins specifically testified, which is entirely consistent with his objective actions, that his purpose was to emphasize the necessity for appellant to deploy and to bring home to appellant the seriousness of his failure to do so—all in the hope that this would motivate appellant to board the aircraft.

Thus, Captain Collins' order was a "specific mandate" to do "a particular act at a definite time," as opposed to merely notifying appellant that he had a temporary duty scheduled; he delivered the order personally to appellant under circumstances that bore all the indicia of a formal command; and his purpose was to emphasize to appellant the importance of compliance with the earlier directive in the hope that appellant, therefore, would comply. In this posture, the military judge correctly ruled that appellant's willful disobedience of the order was an intentional defiance of the authority of Captain Collins' office and, in that connection, was distinct from his failure to comply with the earlier general directive to deploy. *See* para. 14c(2)(f).

### III

▇ The test for determining whether two offenses are multiplicious is "whether each provision requires proof of an additional fact which the other does not," *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *Accord Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); *United States v. Teters,* 37 MJ at 377. Appellant candidly acknowledges, "This analysis would seem to foreclose appellant's argument as to findings multiplicity. . . ." Final Brief at 6. *Compare* para. 11b *with* para. 14b(2), Part IV. We agree. In light of our analysis in Part II of this opinion regarding the relationship between missing movement of a unit that was required by a general order of a higher command and the particular direct order of appellant's superior commissioned officer in the circumstances of this case, the *Teters/Schmuck/Blockburger* test is not involved.

Through some reasoning that is not entirely clear, however, appellant argues nonetheless that, because "the order was given for the purpose of enhancing the punishment when the appellant did not board the aircraft," Final Brief at 7, this changes the result. We disagree. We already have upheld the military judge's conclusion, fully supported by the record, that Captain Collins did not have as a purpose enhancement of appellant's punishment if and when appellant did not board the aircraft; accordingly, the necessary predicate for this argument to succeed under our precedent is missing here.

*See United States v. Landwehr,* 18 MJ 355, 356–57 (CMA 1984).

Finally, to the extent that this issue may be read to ask whether the two offenses are multiplicious for *sentencing,* the issue was mooted when the military judge accepted trial counsel's "conservative approach" of treating the offenses as multiplicious for sentencing. Appellant, however, both at trial and in this Court, has sought the windfall of a holding that, notwithstanding our conclusion in Part II, his "ultimate offense" was missing movement, so his maximum confinement was only the 2 years provided for that offense, rather than the 5 years imposable for disobedience. *See* 39 MJ at 478.

That argument, too, is answered by our holding in Part II that Captain Collins' order under the scenario of this case imposed an independent duty on appellant to board the aircraft, apart from the earlier directive. *United States v. Landwehr, supra.* The purpose behind the "Note" in paragraph 16e(2), Part IV, Manual, *supra*—which limits the punishment for violating Article 92, UCMJ, 10 USC § 892, under similar circumstances to the lesser maximum punishment that is provided for the other offense—is fully served in the context of prosecutions under Articles 90 and 91, UCMJ, 10 USC §§ 890 and 891, by the approach in our precedent cases discussed in Part II. *See id.; United States v. Quarles,* 1 MJ at 232–33. Thus, our rejection in Part II of appellant's argument that is made under the principles of those cases answers this question, too.

## IV

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.