482

UNITED STATES, Appellee

v.

Reginald MORRISON, Staff Sergeant
U.S. Air Force, Appellant.

No. 93-0494.
CMR No. 29253.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 14, 1994.

Decided April 7, 1995.

For Appellant: *Captain J. Knight Champion, III* (argued); *Lieutenant Colonel Frank J. Spinner* and *Captain Ursula P. Moul* (on brief); *Colonel Jay L. Cohen, Colo-*

*nel Terry J. Woodhouse, Lieutenant Colonel Joseph L. Heimann.*

For Appellee: *Major Barnard N. Madsen* (argued); *Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, Captain Jane M.E. Peterson* (on brief); *Colonel Thomas E. Schlegel.*

*Opinion of the Court*

GIERKE, Judge:

1. A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of missing movement through design, in violation of Article 87, Uniform Code of Military Justice, 10 USC § 887. The military judge also convicted appellant, contrary to his pleas, of willful disobedience of the order of a superior commissioned officer (2 specifications), in violation of Article 90, UCMJ, 10 USC § 890. The approved sentence provides for a bad-conduct discharge, confinement for 12 months, partial forfeitures, and reduction to the lowest enlisted grade. The Court of Military Review[1] affirmed the findings and sentence in an unpublished opinion.

2. This Court granted review of the following issue:

WHETHER THE CHARGE ALLEGING VIOLATIONS OF LAWFUL ORDERS TO PREPARE FOR A UNIT DEPLOYMENT IS MULTIPLICIOUS FOR FINDINGS AND SENTENCE WITH THE CHARGE OF MISSING THE DEPLOYMENT ITSELF.

We hold that the military judge did not err by ruling that the two specifications of willful disobedience were not multiplicious with the missing-movement charge.

3. Appellant and 43 other members of his unit were detailed to participate in Operation Desert Shield. Appellant and the 43 other unit members were "advised" to report to a specified location at 5:30 a.m. on January 10, 1991, "with all of their gear and equipment." Appellant failed to appear.

1. *See* 41 MJ 213, 229 n.* (1994).

4. A security police unit found appellant in his dormitory room and escorted him to the security police station. Appellant's squadron commander, Major Lott, went to the security police station at about 6:30 a.m., where he ordered appellant "to dress in proper uniform, pack his gear and return prepared to deploy to Saudi Arabia."

5. Technical Sergeant (TSgt) Clark escorted appellant back to his dormitory room to comply with MAJ Lott's order. At the room, appellant put on his uniform but repeatedly refused to pack his gear. TSgt Clark then escorted appellant back to the security police station. At about 8:55 a.m., MAJ Lott ordered appellant "to report to the pre-departure area for the military flight" to Saudi Arabia. MAJ Lott believed that appellant was bluffing and that, if he called his bluff, appellant would deploy. MAJ Lott asked appellant if he understood the last order, and appellant responded that he did. MAJ Lott asked appellant if he intended to obey the order and appellant responded that he would not. Appellant's unit departed as scheduled at 10:00 a.m., but appellant did not deploy.

6. At trial, defense counsel moved to dismiss the willful-disobedience offenses on the ground that the two willful-disobedience specifications were multiplicious for both findings and sentence with the missing movement specification. Defense counsel also argued that the disobedience offenses should be dismissed because the underlying "ultimate offense" was missing movement. *See United States v. Peaches,* 25 MJ 364 (CMA 1987). The military judge denied the motion to dismiss.

7. *United States v. Brownlow,* 39 MJ 484 (CMA 1994), and *United States v. Traxler,* 39 MJ 476 (CMA 1994), were factually analogous to appellant's case. In those cases we rejected arguments that the "ultimate offense" was failure to deploy and not willful disobedience. We also held that willful disobedience was a distinct offense from failure to comply with an earlier general directive to deploy. We did not address the issue of

sentence multiplicity in either case, however, because in each the military judge rendered the issue moot by treating the offenses as a single offense for punishment. *See* 39 MJ at 480 and 485 n. 2. In the case before us the military judge treated the willful disobedience and missing movement as separately punishable offenses.[2]

8. Our decisions in *Brownlow* and *Traxler* followed *United States v. Teters,* 37 MJ 370, 376–77 (CMA 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994). There we adopted the "elements" test of *Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 1450–51, 103 L.Ed.2d 734 (1989), and *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). In *Teters* we concluded that, where criminal statutes and legislative history are silent regarding congressional intent to permit multiple convictions and punishments, we should resort to the *Blockburger* rule. When the *Blockburger* rule, *i.e.,* the "elements" test, is satisfied, "separate offenses warranting separate convictions *and punishment* can be presumed to be Congress' intent." 37 MJ at 377–78 (emphasis added). *See Ball v. United States,* 470 U.S. 856, 861, 105 S.Ct. 1668, 1672, 84 L.Ed.2d 740 (1985) ("Congress does not create criminal offenses having no sentencing component."). If Congress has indicated an intent to the contrary, "congressional intent controls." 37 MJ at 377 n. 6.

9. The Supreme Court recognized that the *Blockburger* rule could permit harsh punishment. They declined to fashion a remedy but, instead, pointed out that, if having the offenses as separate "be too harsh, the remedy must be afforded by act of Congress, not by judicial legislation under the guise of construction." 284 U.S. at 305, 52 S.Ct. at 182. Our examination of the Supreme Court's decisions in *Blockburger, Ball,* and *Schmuck* leads us to conclude that there is no constitutional prohibition against imposing separate punishments for willful disobedience and missing movement.

---

**2.** With the agreement of counsel for both sides, the military judge considered the two specifications of willful disobedience as a single offense for sentencing.

10. We also conclude that Congress intended to permit separately punishing the offenses of willful disobedience and missing movement. Articles 87 and 90, and their legislative history, are silent regarding congressional intent. Accordingly, we presume congressional intent to permit prosecution and punishment for both offenses, because they have different elements and neither is included in the other. *See United States v. Teters*, 37 MJ at 377–78. *See also United States v. Wheeler*, 40 MJ 242, 244–47 (CMA 1994). *Compare* para. 11b *with* para. 14b, Part IV, Manual for Courts–Martial, United States, 1984.

11. We further conclude that the President has not prohibited separate punishments for willful disobedience and missing movement. Exercising his power to limit sentences under Article 56, UCMJ, 10 USC § 856, the President has promulgated RCM 1003(c)(1)(C), Manual, *supra*. This rule addresses sentence multiplicity as follows: "When the accused is found guilty of two or more offenses, the maximum authorized punishment may be imposed for each separate offense.... [O]ffenses are not separate if each does not require proof of an element not required to prove the other." The language of RCM 1003(c)(1)(C) is thus virtually the same as the "elements" test in *Blockburger*.

12. Finally, we conclude that there are no judicial prohibitions on separate punishments. By judicial decisions before *Teters*, this Court had imposed limits on punishments. *See* RCM 1003(c)(1)(C), Discussion, and Drafter's Analysis, Manual, *supra* at A21–63 (Change 2). In *Teters*, however, we abandoned the "fairly embraced" test of *United States v. Baker*, 14 MJ 361 (CMA 1983). *See* 37 MJ at 376. We had earlier abandoned the "single impulse" test in *United States v. Traeder*, 32 MJ 455, 456–77 (CMA 1991). Under the facts of this case, the punishment is not limited by the "ultimate offense" doctrine. *See United States v. Traxler*, 39 MJ at 478–79, *citing United States v. Peaches*, 25 MJ 364, 366 (CMA 1987), and *United States v. Bratcher*, 18 USCMA 125, 128, 39 CMR 125, 128, 1969 WL 5928 (1969). The order was not given to enhance the punitive consequences of missing the movement but, rather, was given in an effort to gain appellant's compliance with the movement directive by supporting it with the full authority of the squadron commander's office. *See United States v. Traxler*, 39 MJ at 479, *citing United States v. Pettersen*, 17 MJ 69, 72 (CMA 1983), and *United States v. Loos*, 4 USCMA 478, 480–81, 16 CMR 52, 54–55, 1954 WL 2427 (1954); para. 14c(2)(a)(iii), Part IV. We are left only with the "elements" test set out in RCM 1003(c)(1)(C).

13. Applying RCM 1003(c)(1)(C) to this case, we conclude that the offenses are separately punishable. The willful disobedience was completed before the missed movement occurred. The elements of the offenses are different. Neither offense is included in the other. Appellant could have disobeyed the orders but still have moved with his unit, or he could have obeyed the orders but missed the movement. Accordingly, we hold that the willful-disobedience offenses were not multiplicious for findings or sentence with the missing-movement offense.[3]

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and WISS concur.

---

3. Our holding should not be read as carte blanche for unreasonable multiplication of charges by creative drafting. *See, e.g., United States v. Martin*, 36 MJ 315 (CMA 1993) (error to charge simultaneous theft of currency and of ATM card from same victim as separate offenses); *United States v. Langford*, 946 F.2d 798 (11th Cir.1991) (error to charge single sale of stock involving 3 separate mailings as 3 separate offenses), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1562, 118 L.Ed.2d 209 (1992); *United States v. Dixon*, 921 F.2d 194, 196 (8th Cir.1990) (error to charge possession of 2 packages of cocaine at same time and place as separate offenses). *See generally* 8 Moore's Federal Practice § 8.07 at 8–45 to 8–54 (2d ed. 1995); 1 C. Wright, Federal Practice and Procedure: Criminal 2d § 142 at 469–79 (1982). We reiterate our admonition in *United States v. Foster*, 40 MJ 140, 144 n. 4 (1994), that "military judges must still exercise sound judgment to ensure that imaginative prosecutors do not needlessly 'pile on' charges against a military accused."