IN THE CASE OF


UNITED STATES, Appellant

v.

Anthony QUIROZ, Private First Class
U.S. Marine Corps, Appellee

No. 00-5004

Crim. App. No. 98-1864

United States Court of Appeals for the Armed Forces

Argued October 12, 2000

Decided August 28, 2001

    EFFRON, J., delivered the opinion of the Court, in which
GIERKE and BAKER, JJ., joined.  CRAWFORD, C.J., and SULLIVAN,
J., each filed a dissenting opinion.


Counsel


For Appellant: Lieutenant James E. Grimes, JAGC, USNR (argued); Colonel Kevin
    M. Sandkuhler, USMC, Commander Eugene E. Irvin, JAGC, USN, and Lieutenant
    Timothy E. Curley, JAGC, USNR (on brief).


For Appellee:  Lieutenant Commander Michael J. Wentworth, JAGC, USN (argued).



Military Judge:  W. P. Hollerich



THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted appellee, pursuant to his pleas, of four offenses involving the same property (1.25 pounds of M112 demolition charge [C-4]): (1) conspiracy to wrongfully dispose of the property, in violation of Article 81, Uniform Code of Military Justice (UCMJ), 10 USC § 881; (2) wrongful sale of the property, in violation of Article 108, UCMJ, 10 USC § 908; (3) unlawfully receiving the property, in violation of 18 USC § 842(h), as incorporated under Article 134, UCMJ, 10 USC § 934; and (4) unlawfully possessing, storing, transporting, or selling the property, in violation of 18 USC § 842(h), as incorporated under Article 134.  Appellee also was convicted of two specifications involving wrongful possession of marijuana and one specification of wrongful manufacture of marijuana, in violation of Article 112a, UCMJ, 10 USC § 912a.

Appellee was sentenced to a dishonorable discharge, confinement for 10 years, forfeiture of all pay and allowances, and reduction to pay grade E-1.  The convening authority approved the sentence as adjudged.  Pursuant to a pretrial agreement, the convening authority suspended all confinement in excess of 48 months.

United States v. QUIROZ, No. 00-5004/MC

    In its initial review, the Court of Criminal Appeals held
that the conviction for violation of Article 108 (sale of the C-
4) and the conviction for violation of 18 USC § 842(h) (which
included sale of the same property) constituted an unreasonable
multiplication of charges, and the court dismissed the charge
under Article 108.  52 MJ 510, 513 (1999).  In addition, the
court noted the Government's concession that one of the
specifications concerning wrongful possession of marijuana was
facially duplicative with respect to the specification
concerning wrongful manufacture of marijuana.  The court held
that this unlawful possession offense was lesser-included within
the wrongful manufacture offense, and it dismissed that wrongful
possession specification under the doctrine of multiplicity.
Id. at 514.  The court reassessed the sentence on the basis of
the remaining findings and affirmed a dishonorable discharge,
confinement for 8 years, total forfeitures, and reduction to
E-1.  Id. at 515.

    In its opinion on reconsideration en banc, the Court of
Criminal Appeals reaffirmed the panel's decision that conviction
and sentence for the two charges of selling the C-4 constituted
an unreasonable multiplication of charges.  The court held that
consolidation of the two charges into a single offense under
Article 134 would provide an appropriate remedy.  Additionally,
the court dismissed both specifications concerning wrongful

possession of marijuana on the grounds that both specifications constituted lesser-included offenses with respect to the conviction on the charge of wrongful manufacture of marijuana. Based upon the remaining findings, the court reassessed the sentence, affirming a dishonorable discharge, confinement for 7 years, total forfeitures, and reduction to E-1.  53 MJ 600 (2000).

The Judge Advocate General certified the following issues for our review under Article 67(a)(2), UCMJ, 10 USC § 867(a)(2):

> I.  WHETHER THE LOWER COURT ERRED IN HOLDING THAT AN EQUITABLE DOCTRINE OF UNREASONABLE MULTIPLICATION OF CHARGES EXISTS SEPARATE FROM MULTIPLICITY AND IS AN INDEPENDENT BASIS FOR GRANTING RELIEF.
>
> II.  WHETHER THE LOWER COURT ERRED BY ENUNCIATING AND APPLYING A NEW PER SE RULE THAT IT WILL NEVER APPLY FORFEITURE TO CLAIMS OF UNREASONABLE MULTIPLICATION OF CHARGES RAISED FOR THE FIRST TIME ON APPEAL.
>
> III.  WHETHER THE LOWER COURT ERRED IN GRANTING APPELLEE RELIEF FOR BEING CONVICTED OF AN UNREASONABLE MULTIPLICATION OF CHARGES WITHOUT FIRST FINDING THAT APPELLEE HAD SUFFERED MATERIAL PREJUDICE TO A SUBSTANTIAL RIGHT.

The certified issues pertain only to that portion of the lower court's decision consolidating the charges concerning sale of the C-4 on the grounds that they constituted an unreasonable multiplication of charges.  The certified issues do not address

4

the lower court's decision to dismiss the two marijuana-possession specifications under the doctrine of multiplicity. The certified questions, however, address the conceptual relationship between the prohibition against multiplicious charges and the prohibition against unreasonable multiplication of charges. We hold that these are distinct legal prohibitions, founded upon distinct legal principles. For the reasons set forth below, we remand the case to the Court of Criminal Appeals for further consideration in light of our opinion.

## I. THE PROHIBITION AGAINST AN UNREASONABLE MULTIPLICATION OF CHARGES

As noted by the court below, "[t]he principle prohibiting unreasonable multiplication of charges is one that is well established in the history of military law . . . ." 53 MJ at 605. Winthrop, in his classic treatise on 19th century military law, stated: "An unnecessary multiplication of forms of charge for the same offense is always to be avoided." William Winthrop, Military Law and Precedents 143 (2d ed. 1920 Reprint). In the 1928 edition of the Manual for Courts-Martial, U.S. Army, paragraph 27 expressly provided: "One transaction, or what is substantially one transaction, should not be made the basis for an unreasonable multiplication of charges against one person." This proscription was continued verbatim in subsequent editions

5

of the Manual.  See para. 27, Manual for Courts-Martial, U.S. Army, 1949; para. 26b, Manual for Courts-Martial, United States, 1951 and 1969 (Revised ed.).

When the new format for the Manual was adopted in 1984 creating a distinction between the Rules for Courts-Martial set forth in the Executive Order and the non-binding Discussions of these rules, virtually identical language was included in the Discussion accompanying RCM 307(c)(4), which has been retained through subsequent editions.  See Discussion, RCM 307(c)(4), Manual for Courts-Martial, United States (1984, 1994, 1995, 1998, and 2000 eds.).  We agree with the observation of the Court of Criminal Appeals that, although the concept of unreasonable multiplication has been placed in the non-binding Discussion, "[w]e do not believe that the action of the President in placing this longstanding principle in a discussion section of the Manual for Courts-Martial had the effect of repealing it, thereby enabling imaginative prosecutors to multiply charges without limit."  53 MJ at 605; see id. at 604, discussing United States v. Morrison, 41 MJ 482, 484 n.3 (1995), United States v. Foster, 40 MJ 140, 144 n.4 (1994), and United States v. Sturdivant, 13 MJ 323, 329-30 (CMA 1982).

The court below concluded that "multiplicity and unreasonable multiplication of charges are distinct concepts." 53 MJ at 604.  The court noted that "[m]ultiplicity is a concept

United States v. QUIROZ, No. 00-5004/MC

that derives from the Double Jeopardy Clause of the U.S. Constitution ... [and] deals with the statutes themselves, their elements, and congressional intent." Id., discussing United States v. Teters, 37 MJ 370 (CMA 1993). The court contrasted multiplicity with "the longstanding principle prohibiting unreasonable multiplication of charges [which] ... promot[es] fairness considerations separate from an analysis of the statutes, their elements, and the intent of Congress." Id. at 604-05.

We agree with the analysis by the Court of Criminal Appeals. The prohibition against multiplicity is necessary to ensure compliance with the constitutional and statutory restrictions against Double Jeopardy, see U.S. Const. amend. V and Art. 44, UCMJ, 10 USC § 944, in light of applicable judicial precedents. E.g., Blockburger v. United States, 284 U.S. 299 (1932); Schmuck v. United States, 489 U.S. 705 (1989); and United States v. Teters, supra.

By contrast, the prohibition against unreasonable multiplication of charges addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion. For example, the military justice system has a longstanding preference for trying all known offenses at a single trial, see RCM 307(c)(4) and RCM 601(e)(2) (Rule and Discussion), which is different from the preference in

7

the civilian sector for separate trials for each offense.  See Drafters' Analysis of RCM 601(e)(2), 2000 Manual, supra at A21-31, citing Fed. R. Crim. P. 8(a).  Similarly, the existence of broadly worded offenses unknown in civilian society also increases the potential for overreaching.  See, e.g., Arts. 89-92, UCMJ, 10 USC §§ 889-92 (disrespect, disobedience, and dereliction offenses), Art. 133, UCMJ, 10 USC § 933 (conduct unbecoming an officer), and Art. 134, UCMJ, 10 USC § 934 (the General Article); Parker v. Levy, 417 U.S. 733 (1974); see also RCM 1005(e)(1) (Discussion) (concerning calculation of maximum imposable punishment through cumulation of maximum punishment for each offense, rather than through use of sentencing guidelines or concurrent sentencing).

In short, even if offenses are not multiplicious as a matter of law with respect to double jeopardy concerns, the prohibition against unreasonable multiplication of charges has long provided courts-martial and reviewing authorities with a traditional legal standard -- reasonableness -- to address the consequences of an abuse of prosecutorial discretion in the context of the unique aspects of the military justice system.

## II. FORFEITURE

At trial, appellee entered unconditional guilty pleas to all offenses.  Prior to sentencing, he moved that the conspiracy

charge and the charge of receiving the stolen C-4 be treated as multiplicious for sentencing. See RCM 906(b)(12). He also moved that the Article 108 and Article 134 charges involving sale of the C-4 be treated as multiplicious for sentencing. The military judge denied both motions.

As noted above, appellee raised the issue before the Court of Criminal Appeals in terms of an unreasonable multiplication of charges, and the Government responded that relief should not be granted because the issue of unreasonable multiplication was not raised at trial. The Court of Criminal Appeals chose not to address this question in terms of whether the motion at trial fairly embraced the issue on appeal, but instead focused on the unique statutory responsibility of the Courts of Criminal Appeals to affirm "only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Art. 66(c), UCMJ, 10 USC § 866(c). The Court concluded that Article 66(c) provided it with authority to consider all claims of unreasonable multiplication of charges, even if raised for the first time on appeal, and to consider waiver only "if an accused affirmatively, knowingly, and voluntarily relinquishes the issue at trial . . . ." 53 MJ at 606.

9

Congress, in Article 66(c), provided each of the Courts of Criminal Appeals with the authority and the responsibility to affirm only such findings and sentence as it finds correct and determines, on the basis of the entire record, should be approved, which we have described as an "awesome, plenary, de novo power[.]"  See United States v. Cole, 31 MJ 270, 272 (CMA 1990); see also United States v. Lacy, 50 MJ 286, 287-88 (1999). Particularly in view of the extraordinary power of a Court of Criminal Appeals to "substitute its judgment" for that of the court-martial, 31 MJ at 272, the court below was well within its authority to determine the circumstances, if any, under which it would apply waiver or forfeiture to the type of error at issue in the present case.  See United States v. Claxton, 32 MJ 159, 162 (CMA 1991).

## III. THE LOWER COURT'S FRAMEWORK FOR ADDRESSING UNREASONABLE MULTIPLICATION OF CHARGES

After determining that the prohibition against unreasonable multiplication was distinct from the concept of multiplicity, and that the issue had not been waived or forfeited, the court below set forth "a framework for determining whether a given multiplication of charges arising from the same act or transaction, while permissible under Teters, is nevertheless 'unreasonable.'"  53 MJ at 607.  The Court noted that it would

consider the following factors: (1) "Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?"; (2) "Is each charge and specification aimed at distinctly separate criminal acts?"; (3) "Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?"; (4) "Does the number of charges and specifications unfairly increase the appellant's punitive exposure?"; and (5) "Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?" Id. According to the court below, these factors would serve as "a guide, and we do not intend the list to be all-inclusive." Id. The court offered the following standard for application of these factors: "After considering these factors, if we find the 'piling on' of charges so extreme or unreasonable as to necessitate the invocation of our Article 66(c), UCMJ, authority, we will determine the appropriate remedy on a case by case basis." Id.

In general, we conclude that this approach is well within the discretion of the court below to determine how it will exercise its Article 66(c) powers. We emphasize that, in this process, the court is making a determination of law under a classic legal test -- whether the action under review was "reasonable" or "unreasonable." Reasonableness, like sentence appropriateness, is a concept that the Courts of Criminal

11

United States v. QUIROZ, No. 00-5004/MC

Appeals are fully capable of applying under the broad authority granted by Congress under Article 66. See United States v. Sales, 22 MJ 305 (CMA 1986); United States v. Suzuki, 20 MJ 248 (CMA 1985).

In that regard, we have reservations about the lower court's reference to a factor addressing whether "the number of charges and specifications unfairly increase[s] the appellant's punitive exposure." The term "unfairly" could be viewed as applying the factor under an equitable rather than a legal standard, in light of the lower court's reference to its "equitable power" in its initial decision. 52 MJ at 513. The factor may be used, however, so long as it addresses the question in terms of the legal issue as to whether the number of charges and specifications "unreasonably" increased appellant's punitive exposure. Accordingly, we shall remand this case for further consideration by the court below in light of our concern about this factor.

We also note that the lower court recommended that counsel and judges not employ the term "multiplicious for sentencing," in light of the potential for confusion with the doctrine of multiplicity connected to the constitutional prohibition against double jeopardy. 53 MJ at 605 n. 16. Although we recognize that employment of a different term may well be warranted, we note that RCM 906(b)(12) expressly recognizes the right of an

accused to submit a motion for appropriate relief based on "multiplicity of offenses for sentencing purposes." Military judges have traditionally exercised the power to treat offenses as "multiplicious for sentencing" in a prudent and salutary fashion. See United States v. Traxler, 39 MJ 476, 480 (CMA 1994). This doctrine may well be subsumed under the concept of an unreasonable multiplication of charges when the military judge or the Court of Criminal Appeals determines that the nature of the harm requires a remedy that focuses more appropriately on punishment than on findings. The President may decide to amend the Manual to refer to the doctrine of multiplicity for sentencing in the future in terms of an unreasonable multiplication of charges for purposes of sentencing. Until the Manual is amended, however, a motion to treat offenses as "multiplicious for sentencing" remains a valid basis for relief under the Manual.

## IV. DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for reconsideration in light of this opinion.

United States v. Quiroz, No. 00-5004/MC

CRAWFORD, Chief Judge (dissenting):

The late Judge Cook once said: "The problem is not that there are insufficient tests for multiplicity; the problem is that there are so many." United States v. Baker, 14 MJ 361, 372 (CMA 1983)(Cook, J., dissenting). Today, our Court perpetuates the turmoil in the military justice system by sanctioning yet another subjective test, one that smacks of equity, as a way to solve the multiplicity conundrum. I would answer the first certified question in the affirmative. The Court of Criminal Appeals did err by holding that a "doctrine" of unreasonable multiplication of charges can exist separately from the concept of multiplicity set forth in the Constitution, the Uniform Code of Military Justice, and the Manual for Courts-Martial. See, e.g., United States v. Scheffer, 523 U.S. 303 (1998) (President's rules are binding unless they violate the Constitution or Code).

The Double Jeopardy Clause of the Fifth Amendment and its codification in Article 44, UCMJ, 10 USC § 844, together with the Sixth Amendment right to a fair trial, prohibit multiple trials and multiple sentences for the "same" offense. Brown v. Ohio, 432 U.S. 161 (1977). Likewise, these constitutional

provisions prohibit consecutive sentencing for the same offense. Id.

Both the 1917 and 1921 Manuals stated that the "duplication of charges for the same act or omission will be avoided except when, by reason of lack of definite information as to available evidence, it may be necessary to charge the same act or omission as constituting two or more distinct offenses." Para. 66, Manual for Courts-Martial, U.S. Army, 1917 and 1921. The 1949 Manual stated: "One transaction, or what is substantially one transaction, should not be made the basis for an unreasonable multiplication of charges against one person." Para. 27, Manual for Courts-Martial, U.S. Army, 1949.[1] That Manual gave as examples charging a soldier with disorderly conduct and assault, or failure to repair from a routine scheduled duty and absent without leave for the same period of time. That Manual also recognized that exigency of proof may require charging "two or more offenses." Id. Both the 1917 and 1921 Manuals indicated that where the individual is found guilty of both offenses, the soldier should only be punished with reference "to the act or omission in its most important aspect, and if this rule be not

---

[1] This provision remained unchanged in paragraph 26b of the 1951 and 1969 (Revised ed.) Manuals for Courts-Martial, United States.

observed by the court the reviewing authority should take the necessary action." Para. 66, 1917 and 1921 Manuals, supra.

United States v. Quiroz, No. 00-5004/MC

The 1984 and successor Manuals placed this rule in the non-binding Discussion of RCM 307(c)(4). See Manual for Courts-Martial, United States (2000 ed.). When balancing this proscription with the prescription that we try all known offenses at a single trial, RCM 601(e)(2), we examine the various charges to ensure they are aimed at separate criminal acts and do not exaggerate an accused servicemember's exposure to punishment. RCM 1003(c)(1)(C) also prohibits multiple punishment for the same offense.

Courts of Criminal Appeals, with their statutory mandate to decide which findings and sentence must be approved, have both the duty and the authority to address the reasonableness of prosecutorial discretion. See Art. 66(c), UCMJ, 10 USC § 866(c). However, a Court of Criminal Appeals is a court of law, not a court of equity, and it must test prosecutorial discretion under the traditional legal standard of reasonableness. ___ MJ at (8). While both this Court and the lower courts have the power to fashion what some would consider equitable remedies, neither court is operating other than as a court of law. See, e.g., United States v. Hardcastle, 53 MJ 299 (2000); United States v. Williams, 53 MJ 293 (2000); Woodrick v. Divich, 24 MJ 147 (CMA 1987); see also United States v. Britton, 47 MJ 195,

4

<u>United States v. Quiroz</u>, No. 00-5004/MC

202 (1997)(Effron, J., concurring)(referring to an equitable

combination of offenses for sentencing, instead of multiplicious

for sentencing).

Prosecutors have broad discretion when deciding whether to

bring charges against an individual and choosing what particular

charges to bring. <u>See</u> Standard 3-3.9, Discretion in the

Charging Decision, ABA Standards for Criminal Justice,

Prosecution Function and Defense Function (3rd ed. 1993). This

is particularly true in a military justice system which

encourages the charging of all known offenses at one court-

martial. A court of law, in reviewing the prosecutor's charging

decision, can review that decision, for vindictive prosecution,

impermissible discrimination against the class of defendants, or

to determine if there has been malicious and discriminatory

prosecution in multiplying the number of charges brought. <u>See</u>

<u>United States v. Batchelder</u>, 442 U.S. 114, 123-24 (1979). In so

doing, appellate courts are not applying some type of equitable

remedy or substituting an individual judge's views for that of

the prosecutor. Just as individual appellate judges are not

supposed to substitute their personal judgments as to the

appropriateness of a sentence, judges need not fashion remedies

in equity when a legal standard exists by which to measure discretion.

If charges are not multiplicious because the prosecutor has not abused his discretion in the charging process, thereby not unreasonably increasing an accused's punitive exposure, the lower court must then determine multiplicity using one of the three approaches set forth in United States v. Neblock, 45 MJ 191, 202 (1996)(Crawford, J., concurring in the result).[2]

This Court has taken numerous steps to decipher the multiplicity rules based on the Constitution, the Code, and the Manual. To assist the bench and bar, I recommend the adoption of Judge Effron's approach in Britton, 47 MJ at 202-03, or adoption of the pleadings-elements approach as applied by Blockburger v. United States, 284 U.S. 299 (1932). See also Texas v. Cobb, 121 S.Ct. 1335 (2001); Carter v. United States, 530 U.S. 255 (2000); Drafters' Analysis of RCM 1003(c)(1)(C), 2000 Manual, supra at A21-71. The first series of steps was between 1951 and 1975; the second would be the era under United States v. Baker, 14 MJ 361; the third, and current era begins with United States v. Teters, 37 MJ 370 (CMA 1993).

1951 - 1975

The Uniform Code of Military Justice provides no rules for determining multiplicity of charges, findings, or sentences. Article 36, UCMJ, 10 USC § 836, delegates to the President the authority to prescribe "[p]retrial, trial, and post-trial procedures, including modes of proof," in courts-martial, applying insofar as practicable "the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts," so long as not inconsistent with the Code. Article 56, UCMJ, 10 USC § 856, delegates to the President the authority to prescribe the limits of court-martial punishment.

In paragraph 76a(8) of the 1951 Manual for Courts-Martial, United States, the President prescribed a single test for determining the maximum authorized punishment for each of two or more offenses "arising out of the same act or transaction": "The offenses are separate if each offense requires proof of an element not required to prove the other." This rule was taken from Blockburger v. United States, supra. See Legal and Legislative Basis, 1951 Manual at 78.

---

[2] In determining multiplicity, there are three approaches: (1) statutory-elements test; (2) pleadings-elements test; and (3) evidentiary-elements test.

7

Blockburger itself applies the pleadings-elements rather than the statutory-elements test. Blockburger claimed that two drug sales on successive days constituted one offense.

> [S]hortly after delivery of the drug which was the subject of the first sale, the purchaser paid for an additional quantity, which was delivered the next day .... The contention on behalf of petitioner [was] that these two sales, having been made to the same purchaser and following each other with no substantial interval of time between the delivery of the drug in the first transaction and the payment for the second quantity sold, constitute[d] a single continuing offense.

284 U.S. at 301-02.

The Court rejected the claim, stating:

> The Narcotic Act does not create the offense of engaging in the business of selling the forbidden drugs, but penalizes any sale made in the absence of either of the qualifying requirements set forth. Each of several successive sales constitutes a distinct offense, however closely they may follow each other.

Id. at 302.

Notwithstanding this language in Blockburger, this Court criticized the "in vacuo" or "doctrinaire" approach taken in the Manual. United States v. Beene, 4 USCMA 177, 178, 15 CMR 177, 178 (1954). The Beene decision, authored by Judge Brosman, set forth a "societal norm" test. To reflect this Court of Military Appeals decision, the 1969 Manual was changed to add the following language:

8

> Care must be exercised in applying the general rule [the elements test] stated in the above paragraph as there are other rules which may be applicable, with the result that in some instances a final determination of whether two offenses are separate can be made only after a study of the circumstances involved in the individual case. The following are examples of rules under which offenses may not be separate although each offense requires proof of an element not required to prove the other: [there followed a discussion of four categories of cases--when the intent for each of several offenses is to be inferred from the same fact; when two offenses are committed as the result of a single impulse or intent; when the offenses involve violations of different social standards; and when the offenses involve the breach of separate duties].

Para. 76a(5), Manual for Courts-Martial, United States (1969 Revised ed.). As the Drafters' Analysis makes clear, these new rules were merely restatements of those announced in Beene and other cases. See Analysis of Contents, 1969 Manual at 13-8 (Dept of the Army Pamphlet 27-2 (July 1970)).

### Baker Era

In United States v. Baker, supra, the accused was charged with aggravated assault and communication of a threat. The offenses were committed during the same attack, while the accused was attempting to force the victim to drive him to an unspecified location in her automobile. The majority rejected a literal application of the Blockburger "elements" test based on the "additional" tests for multiplicity set forth in the 1969

9

United States v. Quiroz, No. 00-5004/MC

Manual.  Judge Cook, in dissent, leveled the criticism that some tests for multiplicity employed by the majority were "so subjective that, applied to the same facts, they can produce different results for different people."  14 MJ at 372.

The majority in Baker decided that two charges were multiplicious for findings if either (1) one of the charges necessarily included all the elements of the other, or (2) the allegations of one charge "fairly embraced" the elements of the other charge.  14 MJ at 368.  Applying these precepts, the majority concluded that the elements of communicating a threat were neither included nor fairly embraced within those of aggravated assault.  Thus, for findings purposes, the offenses were separate.  Nonetheless, the majority concluded the offenses were multiplicious for sentencing.

### United States v. Teters

In Teters, 37 MJ at 370, we held that forgery and larceny of two checks were not multiplicious for findings, even though the forgery was the means by which the larceny was accomplished. Although the Court did not explicitly overrule Baker and its progeny (e.g., United States v. Allen, 16 MJ 395 (CMA 1983); United States v. Ward, 15 MJ 377 (CMA 1983)), our unanimous

10

United States v. Quiroz, No. 00-5004/MC

Court "buried" it[3] in favor of a multiplicity doctrine rooted more firmly in the Double Jeopardy Clause of the Fifth Amendment and Supreme Court precedent.

> The applicable rule is that, where the same act ... constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

Blockburger, 284 U.S. at 304; accord, Schmuck v. United States, 489 U.S. 705 (1989).

A year later, we determined that two statutes can define one offense when one is a lesser-included of the other. See United States v. Foster, 40 MJ 140 (CMA 1994). In the years immediately following Teters, this Court made it abundantly clear that we rejected the "single impulse," "fairly embraced," and "ultimate offense" theories and tests for determining multiplicity. See United States v. Brownlow, 39 MJ 484 (CMA 1994); United States v. Traxler, 39 MJ 476 (CMA 1994); United States v. Morrison, 41 MJ 482 (1995).

The law began to change in 1995 with the publication of United States v. Weymouth, 43 MJ 329 (1995). Prior to Weymouth, the Court had strictly adhered to a "statutory elements" approach when determining whether crimes were multiplicious with

---

[3] See United States v. Teters, 37 MJ 370, 378 (Cox, J., concurring).

United States v. Quiroz, No. 00-5004/MC

other offenses or lesser-included offenses.  See id. at 333;

see also United States v. Wheeler, 40 MJ 242 (CMA 1994).

However, in Weymouth, the majority explained the difference

between military and federal practice required that "in the

military, the specification, in combination with the statute,

provides notice of the essential elements of the offense."

43 MJ at 333.

> Historical differences between federal and military
> law in this regard should not be surprising.  For one
> thing, unlike federal offenses, military offenses are
> not exclusively the product of statutes.  Countless
> military offenses derive their elemental essence from
> regulations or orders, from customs of the service, or
> from traditional military crimes that have emerged
> from a military common law-like process.  Arts. 90(2),
> 91(2), 92, 133, and 134, UCMJ, 10 USC §§ 890(2),
> 891(2), 892, 933, and 934, respectively.  See Parker
> v. Levy, 417 U.S. 733 ... (1974).  Mere recitation of
> statutory elements would provide servicemembers no
> notice whatever in such cases.

Id. at 335.

     The following year saw a strengthening of the pleadings-

elements approach to multiplicity issues, both here and in the

Supreme Court.  See Rutledge v. United States, 517 U.S. 292

(1996); Neblock, 45 MJ at 191; United States v. Oatney, 45 MJ

185 (1996).  In Rutledge, the unanimous Supreme Court found that

conspiracy to distribute cocaine was a lesser-included offense

of a continuing criminal enterprise (CCE) offense, since the "in

12

concert" element of the CCE offense signified agreement in a plan, and that was tantamount to a conspiracy. In other words, the "in concert" element of the CCE offense was based on the same agreement, as shown by the pleadings, as the conspiracy offense.

In Neblock, we were required to determine whether taking indecent liberties and committing indecent acts with the same child, but at different times, constituted one offense, since both infractions were violations of Article 134, UCMJ, 10 USC § 934. The majority in Neblock sustained the conviction of both offenses because each consisted of different acts at different times. Judge Sullivan, writing the plurality opinion, rejected the pleadings-elements approach. In our separate opinions, Judge Cox and I both embraced the pleadings-elements approach as being truer to Blockburger's prescription.

In Oatney, the Court dealt with two offenses laid under Article 134, communicating a threat and obstructing justice. The appellant contended that his communicating a threat was a lesser-included offense of the obstruction of justice he committed on the same date. The majority compared the elements of the two offenses and, finding that they were different, rejected the appellant's multiplicity argument. Writing for the

13

United States v. Quiroz, No. 00-5004/MC

dissent, then-Chief Judge Cox again applied the pleadings-
elements test in accordance with Weymouth and determined that
under the facts, the appellant had communicated his threat in
order to obstruct justice.  Thus, looking at the pleadings and
the facts of the case, the dissent found multiplicity.

In more recent cases, we have found multiplicity based on
the fact that lesser-included offenses are the same as the
greater offenses under the Double Jeopardy Clause.  See Britton,
47 MJ at 195; United States v. Savage, 50 MJ 244 (1999).

In resolving issues of multiplicity, we are guided always
by the principle that courts may not give more punishment than
the Congress and the President intended.  See Rutledge v. United
States, supra; Missouri v. Hunter, 459 U.S. 359, 366 (1983);
Brown v. Ohio, 432 U.S. at 165.  Where the pleadings and
elements of two statutes define but one offense, the legislature
does not intend to impose multiple punishments for that "same
offense."  See Rutledge, supra; Whalen v. United States, 445
U.S. 684 (1980); Ball v. United States, 470 U.S. 856 (1985).
Accordingly, I would hold that whenever a lower court examines
issues of multiplicity, it must do so in concert with legal
precedent and fulfill its Article 66(c) mandate as a court of
law, not one in equity.

14

United States v. Quiroz, No. 00-5004/MC

The charges in this case were necessary to set forth the extent of appellee's involvement with the explosives and marijuana.  The pleadings in this case establish that appellee entered into a conspiracy with Corporal Lester R. Harris to wrongfully dispose of 1.25 lbs. of C-4 military explosive material.  They also establish that to effect the object of the conspiracy, appellee and Corporal Harris sold the explosive material.

On April 14, 1998, appellee purchased 20 marijuana seeds and planted these seeds in 7 pots.  These pots were found in appellee's home 3 months later.  The evidence in this case establishes important time elements.  First, the explosives were transported by vehicle from one house to another and held for a number of weeks.  Likewise, marijuana seeds were purchased in April and held for 3 months, at which time the plants would have produced marijuana for personal consumption or for distribution.  Certainly these charges are not unreasonably multiplicious when one considers the historical examples given previously.  Thus, under a pleadings approach, these are not multiplicious.  However, I believe that we should adopt the approach of Judge Effron in Britton, 47 MJ at 204, conditionally dismissing Charge II and specifications 2 and 3 of Charge III.  "The dismissal

15

<u>United States v. Quiroz</u>, No. 00-5004/MC

would become effective when direct review becomes final in the manner described in Article 71(c), UCMJ, 10 USC § 871(c)." <u>Id</u>.

Regarding Certified Issue II, I agree that Article 66(c) requires Courts of Criminal Appeals to decide which findings and sentence should be approved. In so doing, the Courts of Criminal Appeals must determine whether or not an issue has been raised either explicitly or implicitly in the trial court. On the other hand, the lower courts are not free to ignore clear guidance from this Court. <u>See</u> <u>United States v. Allberry</u>, 44 MJ 226 (1996); <u>see</u> <u>also</u> <u>United States v. Tualla</u>, 52 MJ 228 (2000). We have clearly said that unless multiplicity is raised and litigated in the court below, the issue is generally waived on appeal. <u>See</u> <u>United States v. Lloyd</u>, 46 MJ 19 (1997); <u>Savage</u>, 50 MJ at 245 (Crawford, J., concurring in the result). Just as we rejected the Air Force Court's "bright line rule" concerning forfeiture of multiplicity issues in <u>Lloyd</u>, we should reject the Navy-Marine Corps Court's sequel that multiplicity claims are never forfeited. Since appellee did raise the question of multiplicity involving a sale of C-4 at his court-martial, and the military judge denied the multiplicity motion as it related to appellee's sentencing, it was proper for the court below to adjudicate the issue and grant appellee appropriate relief

16

United States v. Quiroz, No. 00-5004/MC

within the strictures of the law promulgated by the Congress, President, and superior courts.

Finally, I would hold that the lower court did err in granting appellee relief without finding that he suffered material prejudice. To hold otherwise ignores <u>United States v. Powell</u>, 49 MJ 460, 464 (1998), where we held:

> [W]hile Courts of Criminal Appeals are not constrained from taking notice of otherwise forfeited errors, they are constrained by Article 59(a), [UCMJ, 10 USC § 859(a)] because they may not reverse unless the error "materially prejudices the substantial rights of the accused." Articles 59(a) and 66(c) serve to bracket their authority. Article 59(a) constrains their authority to reverse; Article 66(c) constrains their authority to affirm.

Contrary to appellant's contention and the lower court's finding, the Court of Criminal Appeals' discretion to affirm only those findings and sentence which, based on the entire record, that court thinks should be affirmed is not some equitable doctrine that is separate and apart from that court's duty to correct legal errors.

I would return this case to the Court of Criminal Appeals for further review consistent with the precedential views of our Court.

17

SULLIVAN, Judge (dissenting):

(I)

Overview

The majority opinion creates a new legal right for a
military accused to have <u>legally adequate and separate findings
of guilty</u>[1] dismissed because they constitute an "unreasonable
multiplication of charges."  It remands this case for
reconsideration by the Court of Criminal Appeals to make a
discretionary determination whether appellee's conviction for
wrongfully selling government property, <u>i.e.</u>, C-4 explosives
(Article 108, UCMJ), and his conviction for possessing,
transporting, storing, and/or selling explosive material knowing
it to be stolen (10 USC § 842(h) and Article 134, UCMJ) are an
"unreasonable multiplication of charges."

I dissent to this remand and the judicial creation of a new
right for military accused to have legally separate findings of
guilty dismissed because an appellate court somehow considers
them unreasonable.  <u>See</u> <u>generally</u> <u>United States v. Waymire</u>, 9
USCMA 252, 255, 26 CMR 32, 35 (1958) ("It was never intended

---

[1]  The majority concedes that the offenses at issue are legally
adequate and separate.  <u>See</u> <u>United States v. Teters</u>, 37 MJ 370
(CMA 1993) (offenses found to be legally separate); <u>see</u> <u>also</u>

United States v. Quiroz, 00-5004/MC

that a board of review be given the power to disapprove findings in its 'discretion.'").  In my view, this judicial remedy conflicts with the traditional and present practice at courts-martial and is otherwise unauthorized.  See Discussion, RCM 1003(c)(1)(C), Manual for Courts-Martial, United States (1998 ed.); see also United States v. Scheffer, 523 U.S. 303 (1998) (President, not appellate court, should make rules of evidence and procedure at courts-martial).

(II)
A New Legal Right

In this case, the appellate court below established "an equitable power" for itself to dismiss legally separate findings of guilty when it determines in its discretion that an "unreasonable multiplication of charges" has occurred.  It cited the decision of the Air Force Court of Criminal Appeals in United States v. Erby, 46 MJ 649, 651 (1997), as authority for this "equitable power."  Erby, in turn, cited as authority the Discussion sections of two Manual provisions (RCM 307(c)(4) and 1003(c)(1)(C)) and a decision of this Court in United States v. Foster, 40 MJ 140, 144 n.4 (CMA 1994).  The majority of our Court today rejects the equitable power approach of the

United States v. Martin, 36 MJ 315 (CMA 1993) (offenses found not to be legally separate).

2

appellate court below.  However, it recognizes a "new legal power" of a Court of Criminal Appeals to set aside findings of guilty which are legally separate under United States v. Teters, 37 MJ 370 (CMA 1993), but are nonetheless "unreasonable" in its view.  The sole legal authority cited for this new legal power is the above-noted Discussion section of RCM 307(c)(4).

More particularly, the lower court gave itself a new power, and the majority of this Court now endorses this new power but calls it a different name.  Basically, this new power is a tool to be used against the Government[2] whenever a trial judge or an appellate court reviews two closely related charges in a trial and determines that, even though the two charges are not multiplicious under the law, the charges are unfair because of "an unreasonable multiplication of charges."  Under this new power, if a judge or court in its discretion determines that two charges are an "unreasonable multiplication of charges," then the judge or court must dismiss the "unreasonable" charge or consolidate that charge with another.  Judicial action thus

---

[2]  As Justice Cardozo said:

> But justice, though due to the accused, is due to
> the accuser also.  The concept of fairness must not
> be strained till it is narrowed to a filament.  We
> are to keep the balance true.

transforms a hortatory principle of military justice (that a single instance of misconduct <u>should</u> not give rise to an unreasonable multiplication of charges by the prosecution) into a legally enforceable right of an accused to dismissal of charges or findings.

(III)
<u>Purported</u>
<u>Legal Authority</u>

The majority supports its creation of this new legal right with a slender legal thread, <u>i.e.</u>, a non-binding sentence in the Discussion section of RCM 307(c)(4), which states:

> What is substantially one transaction <u>should</u> not be made the basis for an unreasonable multiplication of charges against one person.

(Emphasis added.)  In my view, this advisory caveat is an insufficient legal basis on which to rely in creating a new legal right to dismissal of a charge or finding of guilty which is legally separate.  Therefore, I cannot join in recognizing this new right, which would permit the court below on remand to consolidate two legal criminal convictions into one.

---

<u>Snyder v. Commonwealth of Massachusetts</u>, 291 U.S. 97, 122 (1934).

This new right, created by the lower court and endorsed by the majority of our Court, is not found in the Constitution, nor in any statute, nor even in a binding section of the Manual for Courts-Martial.  Therefore, I am reluctant to create such a right, even though I do believe in the principle that the prosecution should not unreasonably multiply charges against one person on the basis of substantially one transaction.  This long established principle against "unreasonable multiplication of charges" can only be transformed into a legal right of an accused by Congress in a statute, the President in the Manual for Courts-Martial, or by this court in applying clear constitutional, statutory, or regulatory law.  In sum, the creation of a new legal power must be based on actual legal authority.  As the Roman philosopher Lucretius said, "Nothing can be created out of nothing."  De Rerum Natura, Book 1, line 155.

(IV)
State of the Law

The majority creates a new legal remedy for the military accused for "unreasonable multiplication of charges."  While avoidance of unreasonable multiplication of charges has long been a general principle of military law, its remedy has always been restricted to sentencing an accused only as to the more

serious offense (see authorities cited below).  By permitting

the Court of Criminal Appeals to dismiss findings of guilty for

an unreasonable multiplication of legally separate charges, this

Court goes beyond what is permitted by the Constitution, the

Code, the Manual, and prior military practice.  Compare RCM

907(b)(3)(B) (motion to dismiss "multiplicious" offense

permitted); cf. Discussion, RCM 1003(c)(1)(C) (even if offenses

are legally separate, they may not be separately punishable).


(A)

DISCUSSION SECTION OF MANUAL CREATES NO LEGAL RIGHTS

The majority opinion places exclusive weight on the

Discussion section of RCM 307(c)(4) as authorizing this new

right of the military accused to have findings of guilty

dismissed.  RCM 307(c)(4) contains the following in this regard:

> (4) Multiple offenses.  Charges and
> specifications alleging all known
> offenses by an accused may be preferred
> at the same time.  Each specification
> shall state only one offense.
>
> **Discussion**
>
> What is substantially one
> transaction should not be made the basis
> for an unreasonable multiplication of
> charges against one person.  See RCM
> 906(b)(12) and 1003(c)(1)(C).  For
> example, a person should not be charged
> with both failure to report for a routine

6

> scheduled duty, such as reveille, and
> with absence without leave if the failure
> to report occurred during the period for
> which the accused is charged with absence
> without leave.  There are times, however,
> when sufficient doubt as to the facts or
> the law exists to warrant making one
> transaction the basis for charging two or
> more offenses.  In no case should both an
> offense and a lesser-included offense
> thereof be separately charged.
>
> See also RCM 601(e)(2) concerning
> referral of several offenses.

(Emphasis added.)

In my view, this language, reasonably construed, neither expressly or implicitly authorizes a Court of Criminal Appeals to dismiss findings of guilty to offenses which are otherwise legally separate.  Cf. RCM 907(b)(3)(B).

I also note that it is specifically recognized in the Manual for Courts-Martial that the Discussion section is not binding and creates no legal rights.  The Discussion to paragraph 4 of Part 1 of the Manual for Courts-Martial states in pertinent part:

> These supplementary materials do not
> constitute the official views of the
> Department of Defense, the Department of
> Transportation, the Department of
> Justice, the military departments, the
> United States Court of Appeals for the
> Armed Forces, or any other authority of

the Government of the United States, and they do not constitute rules.  <u>Cf</u>., for example, 5 USC § 551 (1982).  <u>The supplementary materials do not create rights or responsibilities that are binding on any person, party, or other entity</u> (including any authority of the Government of the United States whether or not included in the definition of "agency" in 5 USC § 551(1)).  Failure to comply with matter set forth in the supplementary materials does not, of itself, constitute error, although these materials may refer to requirements in the rules set forth in the Executive Order or established by other legal authorities (for example, binding judicial precedents applicable to courts-material) which are based on sources of authority independent of the supplementary materials.

(Emphasis added.)


Finally, the Discussion section to RCM 1003(c)(1)(C) suggests the practice for treating offenses which are legally separate but which constitute an unreasonable multiplication of charges.  It states in pertinent part:


Even if each offense requires proof of an element not required to prove the other, <u>they may not be separately punishable</u> if the offenses were committed as the result of a single impulse or intent.  For example, if an accused found guilty of larceny (<u>see</u> paragraph 46, Part IV) and of unlawfully opening mail matter (<u>see</u> paragraph 93, Part IV) opened the mail bag for the purpose of stealing money in a letter in the bag, the offenses would not be separately punishable.  Also, if there was a unity

8

> of time and the existence of a connected chain of events, the offenses may not be separately punishable, depending on all the circumstances, even if each required proof of a different element.

(Emphasis added.) Again, this language does not purport to authorize the dismissal of one of the separate charges which should not be separately punished. Instead, the remedy is to ignore this offense when sentencing a military accused.

In sum, neither the Constitution nor the Uniform Code of Military Justice authorizes a trial judge or the Court of Criminal Appeals to dismiss findings of guilty because they are an "unreasonable multiplication of charges." The majority nevertheless creates a right for the military accused to ask a military judge and the Court of Criminal Appeals to dismiss charges against him or set aside findings of guilty based on a non-binding Discussion section of the Manual. To the extent that this right to dismissal is predicated on the Discussion section of RCM 307(c)(4), it is simply unsupported as a matter of law.

(B)

## HISTORICAL PRACTICE AT COURTS-MARTIAL PROVIDES NO SUCH LEGAL RIGHT

Unreasonable multiplication of charges has long been a concern at courts-martial.  Winthrop commented on this problem as follows:

> DIFFERENT STATEMENTS OF SAME OFFENCE.
>
> It is laid down by Chitty [75] that—"It is frequently advisable, when the crime is of a complicated nature, or it is uncertain whether the evidence will support the higher and more criminal part of the charge, or the charge precisely as laid, to insert two or more counts in the indictment."  And Wharton [76] writes—"Every cautious pleader will insert as many counts as will be necessary to provide for every possible contingency in the evidence; and this the law permits."  In military cases where the offence falls apparently equally within the purview of two or more articles of war, or where the legal character of the act of the accused cannot be precisely known or defined till developed by the proof, it is not unfrequent in cases of importance to state the accusation under two or more Charges[77] -as indicated later in this Chapter.  If the two articles impose different penalties, it may, for this additional reason, be desirable to prefer separate charges, since the court will thus be invested with a wider discretion as to the punishment.  <u>Where, however, the case falls quite clearly within the definition of a certain specific article, to resort to plural charges is neither good pleading nor just to the accused.</u>  At most, in such cases, a single

additional charge under Art. 62 should in general suffice.  An unnecessary multiplication of forms of charge for the same offence is always to be avoided. [78] In view of the peculiar authority of a court-martial to make corrections an substitutions in its Findings, and to convict of a breach of discipline where the proof fails to establish the specific act alleged, the charging of the same offence under different forms is much less frequently called for in the military than in the civil practice.

_____

[75]  1 C.L., 248.

[76]  C. P. & P. § 297.  And See 1 Archbold, 93; Com. V. Webster, 5 Cush., 321.

[77]  "The commander who prefers a charge may, in the exercise of a just and legal discretion, when the act may fall under different articles of war, elect under which to charge it, or may charge it variously as in the several counts of an indictment."  G.O. 18 of 1859.

[78]  See G. O. 19, Dept. of the Columbia, 1872; G. C. M. O. 95 Div. Pacific & Dept. of Cal., 1881.

William Winthrop, Military Law and Precedents 143 (2d ed. 1920 Reprint).

This general principle of law (that the unnecessary multiplication of charges is to be avoided) has been followed for many years at courts-martial.  See Discussion, RCM 307(c)(4), Manual for Courts-Martial, United States (2000, 1998,

1995, 1994, and 1984 eds.); para. 26b, Manual for Courts-

Martial, United States, 1969 (Revised ed.) and 1951; para. 27,

Manual for Courts-Martial, U.S. Army, 1949 and 1928; para. 66,

Manual for Courts-Martial, U.S. Army, 1921 and 1917; George B.

Davis, A Treatise on the Military Laws of the United States 72

n.3 (1913).

   Nevertheless, this general exhortation to avoid the

unreasonable multiplication of charges has never been enforced

by the dismissal of such charges or the setting aside of

findings to such charges.  The 1917 Manual for Courts-Martial

makes clear that this type of erroneous pleading is to be cured

by sentencing the accused for only the more serious portion of

the charges.  It states:

> 66.  **Duplication of charges**.  The
> duplication of charges for the same act
> or omission will be avoided except when,
> by reason of lack of definite information
> as to available evidence, it may be
> necessary to charge the same act or
> omission as constituting two or more
> distinct offenses.  When the same act or
> omission in its different aspects is
> charged as constituting two or more
> offenses, the court, even though it
> arrives at a finding of guilty in respect
> of two or more specifications, should
> impose punishment only with reference to
> the act or omission in its most important
> aspect, and if this rule be not observed
> by the court the reviewing authority
> should take the necessary action.  Thus a

12

> soldier should not be punished for
> disorderly conduct and for assault, when
> the disorderly conduct consisted in
> making the assault.  And so, a person
> subject to military law should not be
> charged under A. W. 61 for failure to
> report for a <u>routine</u> duty at a time
> included in a period for which he is
> charged with absence without leave under
> the same article; otherwise, when the
> duty is not a <u>routine</u> duty.  <u>Routine</u>
> duties are those that are regularly
> scheduled, such as reveille, retreat,
> stables, fatigue, schools, drills, and
> parades, but do not include practice
> marches or other previously specially
> appointed and important exercises, of
> which the accused is chargeable with
> notice.

(First emphasis added.)

This practice of treating unnecessary multiplication of charges during sentencing is carried in the various Manuals for Courts-Martial up to the present day.  <u>See</u> para. 66, 1921 Manual; para. 80<u>a</u>, 1928 and 1949 Manual; para. 76<u>a</u>(8), 1951 Manual; para. 76<u>a</u>(5), 1969 Manual; Discussion, RCM 1003(c)(1)(C), 1984, 1994, 1995, 1998, and 2000 Manuals.

(C)

## MILITARY CASE LAW PROVIDES NO LEGAL RIGHT

The Court of Criminal Appeals indicated that it found support for its new equitable power to dismiss findings of guilty on the basis of "unreasonable multiplication of charges" in military case law.  I disagree.  Dicta in <u>United States v.,</u>

13

*Foster*, 40 MJ at 144 n.4, and United States v. Morrison, 41 MJ 482, 484 n.3 (1995), is not legally sufficient to establish such a proposition. [3]  Moreover, although the service Courts of Criminal Appeals have recognized such an equitable power, they rest exclusively on the dicta noted above.  See United States v. Oatney, 41 MJ 619, 623 (N.M.Ct.Crim.App. 1994); United States v. Dean, 44 MJ 683, 684 n.2 (Army Ct.Crim.App. 1996); United States v. Wilson, 45 MJ 512, 513 (Army Ct.Crim.App. 1996); United States v. Erby, 46 MJ 649, 651 (A.F.Ct.Crim.App. 1997).  See generally Michael J. Breslin and LeEllen Coacher, Multiplicity and Unreasonable Multiplication of Charges: A Guide to the Perplexed, 45 A.F.L. Rev. 99, 109-10 (1998) (military policy based on fairness).  The bottom line is that the power to dismiss charges as a remedy for "unreasonable multiplication of charges" is a legal fiction.  Cf. Ball v. United States, 470 U.S. 856 (1985) (power to dismiss multiplicious specifications under the Double Jeopardy Clause expressly established).

(V)
Unreasonableness

---

[3]  No legal authority is cited in United States v. Foster for a power to dismiss such charges.  United States v. Morrison only cites cases in which the charges are not legally separate, i.e., they are multiplicious for findings as a matter of law.  See United States v. Dixon, 921 F.2d 194 (8th Cir. 1990), cited in United States v. Teters, 37 MJ at 373 n.1.

Both the lower appellate court and the majority agree that appellee's offense of wrongfully selling government property in violation of Article 108, UCMJ, and knowingly possessing, transporting, storing, and/or selling stolen explosive material in violation of 18 USC § 842(h) and Article 134 are legally separate offenses under United States v. Teters, supra. Nevertheless, the majority remands this case to the Court of Criminal Appeals to determine whether these two findings of guilty constitute an "unreasonable multiplication of charges." No binding guidance is provided the lower court in making its discretionary call on this question. Assuming the power created by the majority is valid, no reasonable person could conclude under the facts and circumstances of this case that such findings of guilty were an "unreasonable multiplication of charges."

This was a guilty plea case, and appellee admitted the following facts concerning his crimes:

> ACC: Sir, between 1 May 1998 and 30 June 1998 I was giving Corporal Harris a ride home from work. We had just finished work and was driving to his residence. On the way to his residence he was explaining to me a situation where him and his wife had gotten into a disagreement or an argument because of something that happened in the house. On the time drive towards the house he was

15

> explaining to me what it was, what the situation was, and he had let me know that she had found certain C-4 in the house, and she didn't want it in the house, and that was part of the disagreement and argument.
>
> Once we got to his house, sir, we went in, I went to make a phone call. He had showed me the C-4. At that time he was saying that he just wanted to get rid of it, sir. Therefore we had come to an agreement that I was willing to take it from him. I had taken the C-4, and later on I brought it back to—had left his residence, gone into my car, went back to my residence, sir. I had it there for, I believe, a week or so, sir.
>
> At that time, one of my so-called friends which I was hanging out with a lot, Private Hallbert, would come over a lot, basically every day, every other day, you know, we would hang out, go surfing or something, sir. At that time he had noticed that I had the C-4. I had showed him the C-4, and he was willing to buy the C-4 from me, sir. At that time we had come to an agreement where he was willing to pay me the money for the C-4, and at that time, between 29 June 1998 and 30 June 1998, I sold the C-4 to Private Hallbert, sir.

(R. 31-32).

Appellee was charged with and pleaded guilty to four offenses concerning his possession and disposition of 1.25 pounds of M112 Demolition Charge (C-4). <u>First</u>, he admitted conspiring with Corporal Harris beginning in early May of 1998 to wrongfully dispose of this explosive material, which was the

16

property of the Government. (R. 42-49).  Second, he admitted receiving this explosive material from Corporal Harris in early June of 1998, knowing it to be stolen government property. (R. 49-57).  Third, he admitted possessing this explosive, transporting it to his house, storing it for several weeks, and agreeing to sell it to Private Hallbert.  (R. 57).  Finally, he admitted to selling and delivering this explosive material on or about June 30, 1998, to Private Hallbert. (R. 57-61).

Is this an unreasonable multiplication of charges?  When you look at Charge II (the selling of the explosive (C-4) to Private Hallbert on or between June 29 and 30, 1998), you see the gravamen of the crime is the sale of government explosives to a particular person at a particular time.  When you look at Charge IV, specification 2 (the unlawful possessing, storing, transporting, and/or selling government explosives over a 30-day period), you see the gravamen of the offense is the possession and storage of explosives in appellee's home over an earlier 2-week period in June 1998.  These are discrete criminal acts.

The lower court ordered the two convictions combined into one Article 134 conviction.  The lower court could not do this under Teters, so it used a power apparently grounded in equity (the power does not exist in case law or any statute) to give a

new remedy for an "unreasonable multiplication of charges," which "promot[es] fairness considerations separate from an analysis of the statutes, their elements, and the intent of Congress." 53 MJ at 604-05. It is remarkable that the majority of this Court adopts "the analysis by the Court of Criminal Appeals" on this point. ___ MJ at (7). If the lower court is going to create a new equity power, and if our Court is going to help the lower court create this power, why do it in a case like the present one, where there clearly was a long-term possession of explosives and a distinct sale of the same? Prosecution for these two distinct crimes here appears very reasonable. At the very least, the majority should wait for an unreasonable fact pattern to create a new power. I should think a more deserving case to create a new equitable power like this would be in a case where a man is absent without leave for 30 continuous days and is charged with 30 counts of AWOL instead of one charge. Absent some clarity, the majority's label of an "unreasonable multiplication of charges" becomes no more than a substitute for the lower court's equity power.


                           VI
                    Certified Questions


    Although the majority fails to do so, I would answer the three issues in this case which the Judge Advocate General has

18

certified.  Article 67(a)(2), UCMJ.  I want to answer each separately and directly.

The first certified question is:

WHETHER THE LOWER COURT ERRED IN HOLDING
THAT AN EQUITABLE DOCTRINE OF
UNREASONABLE MULTIPLICATION OF CHARGES
EXISTS SEPARATE FROM MULTIPLICITY AND IS
AN INDEPENDENT BASIS FOR GRANTING RELIEF.

It is my view, and as I read the majority opinion's implication as well, that the Court of Criminal Appeals erred in creating an equity power for itself.  United States v. Waymire, 9 USCMA at 255, 26 CMR at 35 ("It was never intended that a board of review be given the power to disapprove findings in its 'discretion'").  I join the majority in its act of setting aside the decision of the Court of Criminal Appeals on this basis.

The second certified issue asks:

WHETHER THE LOWER COURT ERRED BY
ENUNICATING AND APPLYING A NEW PER SE
RULE THAT IT WILL NEVER APPLY FORFEITURE
TO CLAIMS OF UNREASONABLE MULTIPLICATION
OF CHARGES RAISED FOR THE FIRST TIME ON
APPEAL.

My view is that the Court of Criminal Appeals is a court of law and, when acting in this capacity, should be governed by the

rule of law. See United States v. Claxton, 32 MJ 159, 165 (Sullivan, C.J., concurring in part and in the result). Nothing said in United States v. Lacy, 50 MJ 286 (1999), is to the contrary. Accordingly, I disagree with the majority that the Court of Criminal Appeals had discretion to ignore the law of waiver or forfeiture when dealing with questions of law such as unreasonable multiplication of charges. See United States v. Heryford, 52 MJ 265, 266 (2000); United States v. Lloyd, 46 MJ 19 (1997); United States v. Britton, 47 MJ 195 (1997) (law of waiver applicable to claims that charges are multiplicious as matter of law).

The third certified issue is:

> WHETHER THE LOWER COURT ERRED IN GRANTING APPELLEE RELIEF FOR BEING CONVICTED OF AN UNREASONABLE MULTIPLICATION OF CHARGES WITHOUT FIRST FINDING THAT APPELLEE HAD SUFFERED MATERIAL PREJUDICE TO A SUBSTANTIAL RIGHT.

In my view, the Court of Criminal Appeals must find error and material prejudice before it provides relief (Article 59(a), UCMJ), unless it specifically invokes its unique sentence approval powers. Article 66(c), UCMJ. See United States v. Claxton, supra at 165 (Sullivan, C.J., concurring in part and in the result).

20

VII
Need For Remand

The remand portion of the majority opinion recognizes a unique "legal" right for a military accused to seek protection from the Court of Criminal Appeals (and presumably a trial judge) against "unreasonable multiplication of charges."  As stated before, the majority opinion bases this new right on the non-binding Discussion section to RCM 307(c)(4).  This right does not exist in the Code or in the Manual, at least for findings of guilty that are otherwise legally separate.  Cf. RCM 907(b)(3)(multiplicious specification "may be dismissed upon timely motion by the accused").  It does not exist in federal civilian case law.  See generally 24 James Wm. Moore et al., Moore's Federal Practice and Procedure § 608.04[3] (3d ed. 2001); 1A Charles Alan Wright, Federal Practice and Procedure § 142 (3d ed. 1999).  Finally, this newly created right against unreasonable charging is far broader than the particular due process concerns of United States v. Sturdivant, 13 MJ 323 (CMA 1982).  The purpose of this new "right" (to allow trial and appellate judges "to address the consequences of an abuse of prosecutorial discretion in the context of the unique aspects of the military justice system," __ MJ at (8)) provides no real

21

United States v. Quiroz, 00-5004/MC

guidance as to its scope and renders it a dangerous judicial creation.

Various judges of this Court have over the years generally warned prosecutors and convening authorities to avoid "unnecessary piling on" in charging a servicemember at courts-martial.  See United States v. Morrison, 41 MJ at 484 n.3; United States v. Foster, 40 MJ at 144 n.4.  However, the majority opinion's instructions for remand are given to the Court of Criminal Appeals in a case where only two specifications are at issue, hardly a situation of "piling on." Thus, the majority's rubric of "unreasonableness," without more particular definition, effectively provides the Court of Criminal Appeals with carte blanche power to erase findings of guilty.  This equity-type invention of the majority I cannot accept.  See United States v. Waymire, supra.  An appellate court cannot judicially create a new equity power outside the Constitution, the statutes, and service regulations without engaging in judicial legislation.  I would reverse the lower court and affirm both convictions at issue on this appeal.  A remand is not necessary to do justice in this case.

(VIII)
Conclusion

The actions of the lower court and this Court strongly remind me of Homer's hero, Ulysses, who encountered many obstacles on his sea voyage home to Ithaca.  When forced to sail though a narrow strait guarded by the deadly Scylla and Charybdis, Ulysses managed with great difficulty to pass between them. [4]  Unlike Ulysses, the majority - while avoiding Scylla (Equity) - has steered itself straight into the depths of Charybdis (Judicial Activism) by legislating a new legal "right" to dismissal of findings which constitute "an unreasonable multiplication of charges."  This remedy conflicts with past and present military practice and has no legal support anywhere in existing law and, therefore, I must dissent.

---

[4]  In ancient Greek mythology, Scylla and Charybdis were fatal hazards marking the Straits of Messina.  In a high cave on one side of the narrow and rocky passage lived the long-necked, six-headed monster Scylla, who plucked men from passing ships and devoured them.  The shore opposite boasted the fatal whirlpool Charybdis, which three times daily would suck the surrounding seas (and any ships nearby) deep into its whirling center, and three times "vomit forth" the water so violently that the spray reached the other side of the straits.  Odyssey XII, 11.73-110, 234-259.

23